UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | : | |
|---|---|---|
| In re: | : | Chapter 13 |
| | : | |
| THOMAS C. FEASTER, | : | |
| | : | Case No. 12-12491 (ALG) |
| Debtor. | : | |
| | : | |
| THOMAS C. FEASTER, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | Adv. Pro. No. 14-02026 (ALG) |
| | : | |
| THE SURF CLUB OF QUOGUE, INC., | : | |
| | : | |
| Defendant. | : | |

---

### DECISION AND ORDER GRANTING MOTION TO DISMISS

Before the Court is the motion of the Surf Club of Quogue, Inc. (the "Club") to dismiss the amended complaint ("Complaint") in an adversary proceeding brought by debtor Thomas C. Feaster ("Feaster"). For the reasons stated hereafter, the motion is granted.

### BACKGROUND

The Club is a not-for-profit corporation organized and existing under the laws of the State of New York.[1] [Complaint ¶ 7] Feaster was joint owner of a Club membership with Anne Law ("Law") with right of survivorship. As stated in the bylaws of the Club and on the face of the Capital Certificate, any transfer of a certificate required the consent of the Club's Board of Directors (the "Board"). [Complaint ¶ 23, a copy of the by-laws is Carter Decl., Ex. "B" at Article V, Section 4, and a copy of the Capital Certificate is Ex. "F"].

---

[1] The Club's Certificate of Incorporation states that it was formed for the purpose of promoting social contact and fellowship among the members, and to provide recreational opportunities and beach access. [Declaration of Peter M. Carter, Surf Club President, dated July 29, 2014 (Adv. Dkt. #10) ("Carter Decl."), Exhibit "A"]

According to the Complaint [¶ 9-14], Feaster was appointed executor of the estate of one Robert Groh and filed an accounting of Groh's estate; Law objected to the accounting, and on or about March 1, 2011, Feaster and Law entered into a stipulation of settlement. According to the Complaint, on April 17, 2012, the Surrogate's Court granted a judicial settlement of the account subject to the terms of the stipulation (the "2012 Stipulation"); the judicial settlement, among other things, required Feaster to pay Law $205,000, provide her a confession of judgment for $300,000, and transfer to her his right, title, and half interest in the stock certificate. On March 13, 2012, to further the settlement, Feaster requested the Club in writing to issue a new certificate solely in Law's name. [Complaint ¶ 16]. The Board approved and issued a new certificate to Law on or about August 23, 2012.[2]

On June 8, 2012, between the date of the Board's approval of the transfer and the physical delivery of the certificate, Feaster filed a petition under chapter 13 of the Bankruptcy Code, proposing to pay his creditors from his future income. On May 8, 2013, Feaster commenced an adversary proceeding against Law (Adv. Pro. 13-1345(ALG)), alleging that the transfer of money and his half interest in the Club membership to Law were avoidable preferences under § 547 of the Bankruptcy Code. [Complaint ¶ 18]. By stipulation and order entered on March 14, 2014, by this Court (the "2014 Stipulation), the adversary proceeding was settled. [Adv. Pro. 13-1345, Dkt. entry #19]. The settlement required Law to pay Feaster $25,000 and execute all documents reasonably necessary to convey back to Feaster joint membership in the Club together with Law, with rights of survivorship. [*Id*. at ¶ 3] The stipulation stated that "[both parties] acknowledge [that Law] has no control over the actions of the [Club]" in approving or rejecting the transfer.

---

[2] It appears from documents submitted that the Board approved the transfer to Law by vote on or about June 3, 2012 but the new certificate was not delivered until August 23, 2012. [Carter Decl., Ex "F"]

2

[*Id.*]

Law executed a document delivered to the Club directing it "to issue a capital certificate to the Debtor and Law as joint tenants with rights of survivorship . . . to restore the *status quo ante* as it existed prior to the Stock Transfer." [Complaint ¶ 20] The Board rejected the request, asserting that the Board had discretion to withhold consent to transfer a capital certificate. [Complaint ¶¶ 21-24]. On June 4, 2014, Feaster commenced the instant adversary proceeding against the Club, seeking to have this Court direct the Club to deliver a certificate of membership to Feaster and Law as joint owners with rights of survivorship. As amended on June 9, 2014, the Complaint asserts nine claims for relief under the Bankruptcy Code and New York State law. The Club has moved to dismiss all the claims under Fed. R. Civ. P. 12(b)(6).

DISCUSSION

*Standard for Dismissal under Fed. R. Civ. P. 12(b)(6)*

A motion to dismiss for failure to state a claim under F.R. Civ. P. 12(b)(6), made applicable by Bankruptcy Rule 7012(b), is "designed to test the legal sufficiency of the complaint, and thus does not require the Court to examine the evidence at issue." *DeJesus v. Sears, Roebuck Co*., 87 F.3d 65, 69 (2d Cir.1996), *cert*. *denied*, 519 U.S. 1007 (1996); *see also Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir.1984). In deciding a Rule 12(b)(6) challenge, "a court must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." *Rescuecom Corp. v. Google Inc*., 562 F.3d 123, 127 (2d Cir.2009). For a plaintiff to prevail on a motion to dismiss, the factual allegations must "plausibly suggest an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). "Determining whether a

3

complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678, *citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

*Turnover*

Feaster's first claim alleges that the Club "by failing and refusing to convey to the Debtor an interest in the capital certificate as directed by Law, remains in possession of property of the estate." He asserts that such "possession" violates 11 U.S.C. § 542, which provides that "an entity . . . in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title . . . shall deliver to the trustee . . . such property or the value of such property. . . ."

However, "the clear language of the statute require[s] actual or constructive possession by a defendant as a fundamental predicate to a trustee's turnover rights." *In re De Berry*, 59 B.R. 891, 895 (E.D.N.Y. 1986). The allegations of the Complaint establish that Law, not the Club, is and has been in possession, custody and control of the certificate. While the Club apparently has the right to refuse to approve a transfer under its bylaws, it cannot transfer any membership interest by itself or direct a certificate holder to transfer his or her interest. There is no basis for the assertion that by requesting the Club to issue a new certificate, Law transferred her property to the Club or that a request to transfer ownership constituted a transfer of "custody" or "control" to the Club. It is plain that Law remained the owner and custodian of the certificate, and Feaster fails to provide any support in the Complaint for the contrary proposition. Accordingly, Feaster's first claim

(Count I) must be dismissed under Rule 12(b)(6).

*Multiple Avoidance Claims*

In Counts II through VI, the bulk of the Compliant, Feaster seeks "avoidance" of the alleged interest of the certificate allegedly transferred to the Club, pursuant to §§ 544, 547, 548(a)(1)(B), 549, and 550 of the Bankruptcy Code and §§ 273, 278 and 279 of the New York Debtor and Creditor Law (the "DCL").[3] The theory of all Feaster's avoidance claims is that there was an avoidable transfer when, notwithstanding Law's request, the Club refused to transfer half of her interest in the certificate to Feaster. Feaster's assertion is based on the proposition that when Law sought to convey an interest in the certificate to Feaster, it became property of the Debtor's estate, and that when the Club received a request to issue a new stock certificate to replace an old one, part of the interest in the certificate was transferred to the Club and became subject to avoidance. This theory is frivolous.

To avoid a transfer, there has to be a transfer to be avoided. The Bankruptcy Code, in relevant part, defines "transfer" broadly, as "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with (i) property; or (ii) an interest in property." 11 U.S.C. 101(54). The DCL uses a similar word, "conveyance," to cover the same concept and defines it equally broadly as including "every payment of money, assignment, release, transfer, lease, mortgage or pledge of tangible or intangible property, and also the creation of any lien or incumbrance." D.C.L. § 270. However, notwithstanding the breadth of the statutory definitions, there was neither a transfer between Feaster and the Club, nor a transfer between Law

---

[3] Section 547 of the Bankruptcy Code provides for the avoidance of a preference, § 548(a)(1)(B) for the avoidance under Federal law of a constructive fraudulent conveyance, § 549 for the avoidance of a post-petition transfer, and §§ 273, 278 and 279 of the DCL, made applicable by § 544 of the Bankruptcy Code, for the avoidance of a constructive fraudulent conveyance under State law.

5

and the Club. The 2012 settlement required Feaster to transfer his joint interest in the certificate to Law, and the 2014 settlement required Law to transfer a half interest back to Feaster. In either case, when Feaster or Law requested the Club to issue a new certificate, they asked for the Board's approval of a transfer. As reflected by both settlement stipulations, neither Feaster nor Law ever transferred membership to the Club, and there was never a transfer of property to the Club. The Club simply retained at all times its rights of approval. Similarly, § 550(a)(1) of the Bankruptcy Code identifies the party liable on an avoidable transfer as including the "initial transferee of the transfer or the entity for whose benefit such transfer was made." Section 550(a)(2) imposes liability on "any immediate or mediate transferee of such initial transferee." There is no basis for characterizing the Club as an initial or subsequent transferee for avoidance purposes.

Feaster argues that in receiving a request to issue a new certificate, the Club also receives the power to transfer an interest in that certificate and independent control over the certificate's ultimate disposition, and that this constitutes a "transfer" and makes the Club a transferee under the Bankruptcy Code and State law. He provides no authority for the proposition that some degree of *control over* a transfer constitutes a transfer to the entity, and there is no basis on the allegations of this Complaint to deem the Club a transferee. Upon receipt of the request to transfer, the Club had no power to transfer the ownership to itself or to direct the holder to transfer a certificate to someone of the Club's choosing; it simply enjoyed the right to decide whether to approve a proposed transfer to a designee. Notwithstanding that the Bankruptcy Code and DCL both define "transfer" very broadly, it is never defined in the manner Feaster argues. Accordingly, Feaster's avoidance claims and Counts II through VI of the Complaint must be dismissed.

*Unreasonable Restraint on Alienation*

In Count VIII, Feaster next alleges that the restriction imposed by the Club on the transferability of its stock certificates constitutes an unreasonable restraint on alienation.

Since the Club was incorporated in New York State, New York law applies, and the parties so assume in their papers.  Section 503(b)(4) of the New York Not-For-Profit Corporation Law requires each capital certificate to state on its face whether it is transferable to others only with the consent of the corporation.  Cases have consistently concluded that closely held corporations like the Club have the right to impose restrictions on the transferability of ownership interests.  *See*, *e.g.*, *Benson v. RMJ Securities Corp.*, 683 F. Supp. 359, 373 (S.D.N.Y. 1988) (holding that the "special nature and purposes of a closely-held corporation" validated the consent requirement for transfer of the corporation's stock);  *see also*, *Jandel v. Precision Color, Inc.*, 19 B.R. 415 (S.D. Ohio 1982) (holding that restriction on transferability of shares by shareholders of a closely held corporation was not invalid as an unreasonable restraint on alienation but, rather, was binding upon all shareholders under Ohio law as a contractual right voluntarily established by the shareholders).

The allegations of the Complaint state no basis for failure to apply these principles. Although Feaster argues that the Board's decision not to approve the transfer proposed by Law was "unreasonable," he provides no authority that this is the standard.  The Club is a not-for-profit corporation of a social nature.  Social clubs are generally given broad discretion to manage their own affairs.  *See e.g.*, *Automotive Electric Service Corp. v. Association of Automotive Aftermarket Distributors*, 747 F. Supp. 1483, 1511 (E.D.N.Y. 1990) ("where a private club or association hears and decides an internal dispute, the courts will not review the determination

7

unless there is a showing that the hearing was in bad faith or basically unfair or that the determination was fraudulent or was utterly unsupported by any evidence"). There are no facts alleged in the Complaint that suggest that the Board reached its decision in bad faith. Feaster's claim of unreasonable restraint on alienation is dismissed.

*Disallowance of Claims*

Count VII of the Complaint alleges that the Club's proof of claim should be expunged under Bankruptcy Code § 502(d), which disallows the claim of any party who received an avoidable or recoverable transfer under §§ 547, 548 or 550. However, the Club has filed no proofs of claim against Feaster, and the time for filing a claim has passed. This cause of action is at best premature and must be dismissed. *See Tronox Inc. v. Anadarko Petroleum Corp. (In re Tronox, Inc.)*, 429 B.R. 73, 109 (Bankr. S.D.N.Y. 2010) (dismissing claims based on § 502(d) because "it was premature for Plaintiffs to raise the issue at a time when Defendants had not yet filed proofs of claim.")

*Frustration of the Enforcement of a Court order*

Feaster's final claim in the Complaint is that the Club frustrated the implementation of the Preference Order pursuant to the 2014 stipulation by refusing to issue a capital certificate jointly owned by Fester and Law. (Count IX) This claim is also frivolous. Feaster and Law both recognized that Law had no control over the Board's approval of the transfer, and they so acknowledged in the 2014 Stipulation. The Club was never under a court order to do anything. This claim is dismissed.

*Violation of the Automatic Stay*

In his opposition to the Club's motion to dismiss, Feaster for the first time alleges that the

8

Club's issuance of a certificate solely in Law's name in 2012 was a post-petition transfer, thus violating the automatic stay under § 362 of the Bankruptcy Code. Although the Club apparently approved the transfer from joint ownership to sole ownership by Law prior to Feaster's 2012 chapter 13 filing, there is no dispute that delivery of a new certificate to Law did not take place until after the filing.

There is conflicting authority as to whether failure to deliver a stock certificate prevents the passing of title in shares under New York law as between the parties if the corporation recorded the transfer. *See In re Lefrak*, 215 B.R. 930, 938 (S.D.N.Y. 1998). However, there is nothing before the Court that raises any issue dating from 2012, and Feaster cannot raise it in his brief. *Fadem v. Ford Motor* Co., 352 F. Supp.2d 501, 516 (2005) ("parties cannot amend their pleadings through issues raised solely in their briefs"). This is especially true because the 2012 transfer is based on an April 17, 2012 judicial settlement stipulation in a Surrogate's Court proceeding, which required that Feaster transfer his interest in the certificate to Law. Feaster cannot seek to avoid one part of that settlement in a passage in a brief in another Court. Whether opening up the Surrogate's Court settlement would benefit Feaster's chapter 13 creditors, or whether the Court should grant retroactive relief from a possible technical stay violation are not properly before this Court for decision.

## CONCLUSION

The motion to dismiss the Complaint is granted.

IT IS SO ORDERED.

Dated: New York, New York
       December 23 2014

                                        **s/Allan L. Gropper**
                                        UNITED STATES BANKRUPTCY JUDGE

9